ARTURO SCULL AND AIDA SCULL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Scull v. Commissioner
Docket No. 20093-81
United States Tax Court
T.C. Memo 1983-33; 1983 Tax Ct. Memo LEXIS 762; 45 T.C.M. (CCH) 540; T.C.M. (RIA) 83033; January 17, 1983. Arturo Scull, pro se. Francis J. Strapp, Jr., for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency in petitioners' Federal *763 income tax for the calendar year 1978 in the amount of $1,087. The issues for decision are as follows: (1) Whether petitioners are entitled to a credit for child care expenses under section 44A; [1] and (2) Whether the deductibility of certain rental expenses incurred by petitioners is limited by section 183. Both issues are strictly factual. In order to facilitate our disposition of them, we will combine the findings of fact and opinion as to each. Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, resided in Union City, New Jersey at the time that they filed their petition in this case. They filed a joint Federal income tax return for the calendar year 1978 with the Internal Revenue Service Center at Holtsville, New York. Issue 1. Child Care Credit
On their 1978 income tax return petitioners claimed a credit in the amount of $400 for child care expenses. In the notice of deficiency respondent disallowed the credit for lack of substantiation. During *764 1978 petitioners were both employed on a full-time basis. Arturo worked as a computer programmer and Aida worked as a medical assistant. Because of their employment they found it necessary to secure day-care services for their two-year old daughter Raquel. Accordingly, they made arrangements with an individual by the name of Blanca Cardenas to care for their child during the day while they were at work. Raquel would be taken to Blanca's house no later than 7:30 each weekday morning and would be picked up about six o'clock that evening. Petitioners paid Blanca Cardenas $40 per week ($2,080 for the year) to care for their daughter. They paid this amount in cash because Blanca, an illegal alien, would not accept payment in any other form. In the case of an individual who maintains a household which includes as a member one or more "qualifying individuals," section 44A(a) allows as a credit an amount equal to 20 percent of the "employment-related expenses" paid by such individual during the taxable year. If there is only one "qualifying individual," section 44A(d) limits the amount creditable to $2,000 and therefore the credit to $400. Respondent does not question that *765 Raquel was a "qualifying individual" or that petitioners incurred "employment-related expenses" within the meaning of section 44A. Rather, he questions whether petitioners actually paid the expenses in respect to which they claimed the child care credit. We have found as a fact, however, that during 1978 petitioners paid Blanca Cardenas $40 per week, or $2,080 for the year, to care for their daughter. No other facts are in dispute. Accordingly, we hold for petitioners on this issue. Issue 2. Deductibility of Rental Expenses
On their 1978 income tax return petitioners claimed a rental loss in the amount of $2,808.03. In the notice of deficiency respondent disallowed the loss on the basis that petitioners' rental activity was not engaged in for profit within the meaning of section 183. In early January 1975 petitioners acquired a two-family frame house in Union City, New Jersey. The first floor of the house consisted of a 3-room apartment and the second floor consisted of a 4-room apartment. Petitioners occupied the second floor as their personal residence and rented the first floor. From 1975 through 1977 they rented to Arturo's stepbrother Angel. During 1978 they *766 rented to Arturo's brother Ricardo. From 1979 through 1981 they rented to an unrelated third-party. Section 183 provides the statutory framework for our analysis. [2] Subsection (a) provides as a general rule that if an individual engages in an activity and "if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section." In the case of an activity not engaged in for profit, subsection (b) allows as deductions (1) those which would be allowable regardless whether the activity was engaged in for profit (e.g., real estate taxes and interest on a mortgage); and (2) those which would be allowable only if the activity were engaged in for profit (e.g., repairs and utilities), but only to the extent that the gross income from the activity exceeds the deductions otherwise allowable. Finally, subsection (c) defines an "activity not engaged in for profit" as an activity with respect to which deductions are not allowable under either section 162 (ordinary and necessary business expenses incurred in carrying on a trade or business) or section 212 (expenses incurred in the production of income *767 or the management, conservation or maintenance of property held for the production of income). *768 The key requirement under both section 162 and section 212 is that the taxpayer must have engaged in the activity with an actual and honest objective of making a profit. Dreicer v. Commissioner,78 T.C. 642 (1982), on appeal (D.C. Cir., June 1, 1982); Allen v. Commissioner,72 T.C. 28, 33 (1979). The taxpayer's profit objective must be bona fide, although it need not be reasonable, and greater weight is assigned to objective facts rather than the taxpayer's stated intent. Section 1.183-2(a), Income Tax Regs. To aid in the analysis, the regulations provide a non-exhaustive list of factors to be considered, none of which is determinative and not all of which are necessarily relevant to every case. Section 1.183-2(b), Income Tax Regs. See Cox v. Commissioner,T.C. Memo. 1982-667 (Issue 5). The issue before us is factual, and the burden of proving the requisite profit objective is on petitioners. Welch v. Helvering,290 U.S. 111, 115 (1933); Allen v. Commissioner,72 T.C. at 34; Rule 142(a), Tax Court Rules of Practice and Procedure. Based on the record before us, we do not think petitioners *769 have carried their burden. We begin with the history of losses generated by petitioners' property.See section 1.183-2(b)(6), Income Tax Regs. Cf. section 1.183-2(b)(7), Income Tax Regs. That history is reflected in the following schedule: [3]
1975
1976
(1) Rents reported
$1,020.000 $1,020.00 (2) Expenses claimed
(a) Real Estate
Taxes
$1,300.96
$1,720.22
(b) Interest
1,742.31
1,720.27
(c) Utilities
888.72
1,044.08
(d) Repairs
340.25
102.25
(e) Insurance
101.00
120.60
(f) Other
328.46
1,073.26
(g) Total
$4,701.70
$5,780.68
(h) Amount allocated
to rental activity
50%
2,350.85 50%
2,890.34 (3) Cash flow
(line (1) minus
line (2(h))
($1,330.85)
($1,870.34)
(4) Depreciation claimed
(50%)
850.48 999.99 (5) Rental loss claimed
($2,181.33)
($2,870.33)
(line (3) minus line (4))
1977
1978
1979
(1) Rents
reported
$1,020.00 $1,020.00 $1,400.00 (2) Expenses
claimed
(a) Real Estate
Taxes
$1,629.79
$1,701.50
(b) Interest
1,582.43
1,503.23
(c) Utilities
1,078.78
1,321.44
(d) Repairs
303.79
168.48
(e) Insurance
165.56
166.00
(f) Other
560.50
871.07
(g) Total
$5,320.85
$5,731.72
(h) Amount
allocated
to rental
activity
50%
2,660.43 50%
2,865.86 (3) Cash flow
(line (1) minus
line (2(h))
($1,640.43)
($1,465.86)
(4) Depreciation
claimed
(50%)
1,167.60 1,167.60 (5) Rental loss
claimed
($2,939.94)
($2,808.03)
($2,633,46)
(line (3) minus
line (4))
*770 1980
1981
(1) Rents reported
$1,500.00 $2,100.00 (2) Expenses claimed
(a) Real Estate
Taxes
$2,022.62
$2,357.39
(b) Interest
1,418.83
1,319.91
(c) Utilities
1,525.89
1,322.44
(d) Repairs
454.09
648.75
(e) Insurance
187.03
209.40
(f) Other
897.88
1,279.22
(g) Total
$6,506.34
$7,137.11
(h) Amount allocated
to rental activity
50%
3,253.17 50%
3,568.56 (3) Cash flow
(line (1) minus
line (2(h))
($1,753,17)
($1,468.56)
(4) Depreciation claimed
(50%)
1,208.60 1,467.05 (5) Rental loss claimed
($2,961.77)
($2,935.61)
(line (3) minus line (4))
As one can see, petitioners' rental activity has always produced a loss. The amount of the loss has been rather consistent, ranging between $2,175 and $2,975 each year. In fact, the amount of the loss during the last six years has been extraordinarily consistent, ranging between $2,625 and $2,975 each year. Over the entire seven-year period the loss has averaged $2,760 per year. The loss for 1978 was within $50 of this amount. The schedule also demonstrates that petitioners' rental activity has always produced a negative *771 cash flow. Again, the amount of the cash flow has been consistent, ranging between ($1,325) and ($1,875) each year. For the six years for which data is available the cash flow has averaged ($1,590) per year. The cash flow for 1978 was within $60 of this amount. It is also significant that petitioners' out-of-pocket expenses allocable to the rental activity exceeded gross rents by more than a 2-to-1 margin for every year except 1981. Moreover, just their fixed expenses for interest and taxes allocable to the activity exceeded gross rents for every year except 1981. In sum, we think the consistency, stability, and magnitude of petitioners' losses demonstrates the extraordinary unlikelihood that they could ever achieve a profitable operation. In our view this is an important factor bearing on their true intention. See Golanty v. Commissioner,72 T.C. 411, 426-427 (1979), affd. by order (9th Cir., Mar. 25, 1981). Next, we turn to the manner in which petitioners carried on the rental activity. See section 1.183-2(b)(1), Income Tax Regs. The record indicates that they did not operate the property in a businesslike manner. First, petitioners rented the first-floor *772 apartment to Arturo's stepbrother Angel for $85 per month for the three-year period preceding 1978. During 1978 they rented the apartment to Arturo's brother Ricardo for the same monthly amount. [4] Thus, for four years they charged the same rent, notwithstanding the fact that that amount was grossly inadequate to even pay the interest and real estate taxes allocable to the rental activity. During this period they also expended nearly $8,000 for capital improvements (one-half of which amount was allocable to the rental activity) but made no adjustment for rent. Petitioners did raise the rent in 1979 and again in 1980, and by 1981 they were charging more than double what they charged in 1978. But during this latter three-year period they were renting to an unrelated third party. In our opinion the rent charged to Ricardo reflects an intention to financially assist a relative rather than an intention to make a profit. See Jasionowski v. Commissioner,66 T.C. 312, 322 (1976). *773 Other facts which call into question the manner in which petitioners operated the property include the lack of a written lease with Ricardo, the failure to advertise the apartment other than by word of mouth, the minimal effort expended to determine what might constitute a fair rental value, and only the most rudimentary of recordkeeping systems. We might also mention that petitioners never consulted advisors more expert than themselves in order to determine, for example, whether anything could be done to achieve profitability or what might constitute fair rental value. See section 1.183-2(b)(2), Income Tax Regs.Cf.Engdahl v. Commissioner,72 T.C. 659, 667-668 (1979).
Petitioners attempt to refute the numerous adverse inferences which can be drawn from this record by claiming that the prospect of long-term appreciation in the value of the property figured prominently in their willingness to tolerate the rental losses. We recognize that the expectation of appreciation is an important and appropriate factor to consider in analyzing the profit-motive issue. See section 1.183-2(b)(4), Income Tax Regs. On the other hand, the mere fact that the taxpayer is aware of *774 the potential for long-term appreciation does not automatically mean that rental expenses will qualify for deductibility under section 162 or 212. See Jasionowski v. Commissioner,66 T.C. at 323; see also Beltran v. Commissioner,T.C. Memo. 1982-153. There is no evidence that petitioners investigated the prospects for long-term appreciation before buying the property. They did not consult any realtors or professional appraisers in the Union City area for information concerning the degree to which property values had escalated in past years or for projections of future trends. There is also no evidence that petitioners had ever before purchased real estate for investment purposes. Furthermore, an expectation of long-term appreciation is hard to reconcile with Arturo's testimony that "Hudson County * * * is the poorest county in the state and Union City is the poorest city in the county." Finally, petitioners contend that the property does not include a swimming pool, a tennis court, or any other such recreational component. Again we recognize that the element of personal pleasure or recreation is an appropriate factor to consider. See section *775 1.183-2(b)(9), Income Tax Regs. However, it is not determinative and, in our opinion, it is insufficient in the context of this case to overcome the other factors which militate against petitioners' alleged profit objective. Moreover, we are inclined to think that petitioners' objective in renting the first floor of their property was to minimize the high cost of home ownership. Viewed in this light we cannot say there was no element of personal pleasure involved in this case. To reflect our conclusions, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue.↩
2. The pertinent parts of section 183 are as follows: SEC. 183. ACTIVITIES NOT ENGAGED IN FOR PROFIT. (a) GENERAL RULE.--In the case of an activity engaged in by an individual or an electing small business corporation (as defined in section 1371(b)), if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section. (b) DEDUCTIONS ALLOWABLE.--In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed-- (1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and (2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1). (c) ACTIVITY NOT ENGAGED IN FOR PROFIT DEFINED.--For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212.↩
3. All entries are taken from petitioners' joint Federal income tax returns for 1975 through 1981. Complete data for 1977 is not contained in the record.↩
4. At trial Arturo testified that Ricardo paid $100 per month in rent. This is contrary, however, to what he told respondent's agents during the administrative phase of this case. Moreover, petitioners reported gross rents of $1,020 for 1978, an amount which is evenly divisible by $85 but not by $100. Accordingly, we have found that Ricardo paid $85 per month in rent.↩